UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:11-CV-159-F

| | | |
|---|---|---|
| VERNON AUGUSTUS GUION, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| RAY MABUS, Secretary of the Navy, | ) | |
| Defendant. | ) | |

This matter is before the court for ruling on the defendant's Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6), FED. R. CIV. P. *See* [DE-10]. The *pro se* plaintiff, Vernon Augustus Guion ("Guion") file a timely Response [DE-13] in opposition thereto. The matter is ripe for disposition.

## *FACTUAL BACKGROUND*

Guion, an employee of the Department of the Navy (hereinafter "the Agency') serving as a WG-3806-05 Sheet Metal Mechanic (Aircraft) Helper at the Fleet Readiness Center East ("FRC East") Cherry Point, North Carolina, brings an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000, *et seq.*, as amended. *See* Compl. [DE-1.1] ¶ 3. He alleges that he was subject to discrimination based on his race (African-American) and personality when he was not among those workers in his shop selected to work overtime on December 6 and 13, 2008. *See id.* ¶6; *see also* defendant's Memorandum [DE-11] (hereinafter "Memo"), Exh. A, EEOC Administrative Judge's Initial Decision, January 25, 2011, p. 2.

Overtime is governed by Article 9 of the Negotiated Agreement (hereinafter "Negotiated Agreement") between the FRC East and the Local Union, Lodge 2297. *See id.* at p. 3. After receiving approval to assign overtime, Guion's supervisor, Peggy Sue Burke, notified Mr. Gregory Wrenn, Shop Work Leader, of the jobs to be worked and the number of workers needed. Ms. Burke provided Wrenn with the most recent Overtime Assignments Sheet to

record who would be working the overtime. Thereafter, Wrenn queried the employees, beginning with the employee with the fewest overtime hours, within the required trade group at the skill level required to complete the job. Proper protocol is to ask a Mechanic before a Helper because of the skill level. *See* Memo [DE-11], Exh. B, Burke Decl. ¶ 6. Mechanics (WG-lOs and WG-08s) are deemed best able to work independently. *See id.* The overtime requestor went down the list until the requisite number of employees was obtained. If an employee were to decline the overtime offer, the requestor continued down the list until the required number of qualified volunteer workers had been obtained. *See id.*

The Agency explains that, on the dates in question, Guion was not asked to work overtime because the required number of employees had been satisfied pursuant to the protocol before Guion's name was reached on the Overtime Assignment list. *See* Memo [DE-11], Exh. A, p. 7. As a Helper, Guion was in a lower skill level, and therefore was lower on the list. *See id.*, Exh. B, Burke Decl. at ¶ 8.

On December 6, 2008, no Sheet Metal Co-op/Helper or WG-06 was asked to work overtime. *See id.* On December 13, 2008, the Overtime Assignment Sheet incorrectly reflected that Guion had worked 115 hours of overtime from March 3, 2008, through December 5, 2008. In fact, Guion not worked that many overtime hours. *See id.*, Exh. A, p. 6. The error was discovered and certified after Guion raised the issue in his EEOC Administrative Complaint, resulting in correction of the Overtime Assignment Sheet. Even with in light of the correct overtime hours, however, Guion still would not have been offered overtime hours on December 6 and 13, 2008. Before Guion's name came up on the list, the Shop Lead already had filled the overtime positions requested for those dates, based on skill level and overtime hours already worked. *See id.*, p. 7.

## *PROCEDURAL HISTORY*

Guion contacted FRC East's Equal Employment Opportunity Office (EEO) on December 16, 2008, alleging race discrimination and reprisal after he was denied overtime on the 6th and 13th of that month, and discovered that excess hours had been reported on the Overtime Assignment Sheet. *See* Memo [DE-11], Exh. C, EEO Counselor's Report. Guion's issues were not resolved through the EEO's informal counseling process.

Guion filed his formal EEO Administrative Complaint on January 16, 2009, alleging race discrimination and reprisal.[1] The following issue was accepted for investigation: Was Mr. Vernon A. Guion discriminated against based on his race (black) and reprisal (prior EEO involvement) by his first line supervisor, Ms. Peggy Sue Burke, who (1) denied him overtime on December 6 and 13, 2008; and (2) provided inaccurate information on the Overtime Assignment Sheet. *See id.*, Exh. D, Acceptance and Dismissal Letter. An investigation was conducted by Department of Defense, Civilian Personnel Management Service, Investigations and Resolutions Division on April 28 and 29, 2009, from which a 355-page report was produced.

Guion elected to have his claims heard by an EEOC Administrative Judge ("AJ") and the administrative case proceeded to discovery. Guion served written discovery consisting of

---

[1] The factual basis Guion set forth in his Formal Administrative Complaint [DE-11.4] Exh. C, Attachment A, was "Because of my race (Black) and prior EEO involvement (27 November 2006), I was denied overtime on 6 and 13 December 2008, by my first line supervisor, Ms. Peggy Sue Burke and she provided inaccurate information on the overtime assignment sheet that I worked 115 hours. I only worked 54 hours of overtime." *Id.* ¶ 9. The specific relief he sought was "to be paid for 6 & 13 December 2008 and all other money due up to and including the total 115 hours." *Id.* ¶ 10.

about 30 Requests for Admission and 30 Interrogatories. On September 19, 2009, he filed a motion to amend seeking to add a "failure to properly train" claim. The Agency objected to the amendment.[2]

Prior to a hearing in the administrative matter, the Agency moved for summary judgment, which motion was granted by the AJ on January 25, 2011. The Agency issued its Final Agency Decision on March 7, 2011. Guion appealed the AJ's decision to the EEOC's Office of Federal Operations on March 28, 2011.

Guion filed his Complaint [DE-1.1] initiating this action on November 28, 2011, before the Office of Federal Operations issued a decision, but more than 180 days after he had filed the appeal. In his Complaint, Guion contends that the Agency, motivated by a discriminatory intent based on his race and his personality, (A) violated Title VII by causing him to suffer (1) economic deprivation; (2) a hostile work environment; and (3) denial of training; and (B) conspired to injure him by engaging in despotism and oligarchy. The full extent of Guion's factual allegations in support of the discrimination which he contends occurred on or about "Dec. 6 & 13, 2008," is contained in ¶ 9 of his Complaint [DE-1.1]:

> Beginning Dec. 3, 2001, until this case, the Complaintant [sic] have [sic] been devastated financially, the lost [sic] of home, saving, future ambition, retirement and family relations, can only be seen with the actions of these people on this case. Therefore, the plaintiff ask [sic] for a jury trial, so the weight of this case could be weighted. The misuse of Regulations, Rules and other Directives in clear violation of basic Rights and liberties.

---

[2] The Agency explains in its Memorandum [DE-12] in support of dismissal that it cannot find an AJ decision on Guion's amendment request, and that an amendment is not addressed in the AJ's decision. However, since this is a *de novo* review, the absence of a decision in the administrative arena does not affect this court's ability to determine whether the proposed additional claims properly are before this court.

4

## STANDARD OF REVIEW

A. Rule 12(b)(1)

A Rule 12(b)(1) motion challenging subject matter jurisdiction questions the "very power" of the court to hear the case. *United States v. Beasley*, 495 F.3d 142, 147 (4th Cir. 2007). "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside of the pleadings without converting the motion into one for summary judgment." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (internal quotations omitted). "The burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A plaintiff's failure to exhaust administrative remedies deprives the district court of subject matter jurisdiction over a Title VII claim. *See Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (citing *Davis v. North Carolina Dep't of Correction*, 48 F.3d 134, 138-40 (4th Cir. 1995)).

B. Rule 12(b)(6)

In evaluating a Rule 12(b)(6) motion, the court assumes all well-pleaded facts in the Complaint to be true and draws all reasonable inferences in favor of the plaintiff, *see E.I. du Pont de Nemours & Co. v. Kolon Indust., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011), but need not accept as true legal conclusions or "unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (internal citations omitted). Federal Rule of Civil Procedure 8(a)(2) requires a "showing" — more than just a "blanket assertion" — of the grounds which would entitle the plaintiff to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). A well-pleaded complaint must therefore contain factual allegations that produce "an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.' " *Nemet Chevrolet*, 591 F.3d at 256 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)).

In order to satisfy this standard, the complaint must contain more than "an unadorned, "the-defendant- unlawfully-harmed-me" accusation or "naked assertions devoid of further factual development." *Iqbal*, 556 U.S. at 678. A defendant is entitled to have a claim dismissed if the plaintiff fails to allege enough facts "to raise a right to relief above the speculative level" by providing "enough facts to state a claim to relief that is plausible on its face." *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009) (citing *Twombly*, 550 U.S. 544).

### ANALYSIS

A. Title VII Claims

Guion's Complaint is not the model of clarity or specificity, but, construing it liberally, the court perceives that he intends to allege that the Agency subjected him to racial and "personality" discrimination in violation of Title VII by (1) preventing him from working overtime hours so as to limit his earnings, (2) creating a hostile work environment; (3) depriving him of training opportunities in order to prevent his "advancement." The court first will attempt to address each component of Guion's Title VII allegations, each of which is based directly on his response to the Title VII form Complaint [DE-1], question 6, "Defendant(s) conduct is discriminatory with respect to the following." Of the five choices, Guion checked "my race" and "other as specified below:" "PERSONALITY." Title VII does not recognize "personality," without more, as a discrete class protected by the Constitution. Accordingly, the court will examine Guion's allegations that the Agency's conduct was the result of racial discrimination and/or in retaliation or reprisal for Guion's prior EEO complaints.[3]

---

[3] The court is aware, at least, of the following unsuccessful employment discrimination actions Guion has prosecuted against the Agency in this court. *Guion v. England*, No. 4:04-CV-198-H (E.D.N.C.) (Alleging sexual harassment; case dismissed for failure to allege factual predicate); *Guion v. England*, No. 4:05-CV-30-FL (E.D.N.C.) (Summary judgment allowed in action challenging validity of settlement agreement reached on January 13, 2004, concerning race, failure to promote, and hostile work environment); *Guion v. England*, No. 4:06-CV-70-F (E.D.N.C.) (Summary judgment for the Agency on allegations of restrictions of job opportunity, retirement and job security related to a medical condition; race), *aff'd*, No. 08-1428 (4th Cir.

6

Guion's "economic deprivation" ground necessarily presumes the viability of his allegations that the Agency was motivated by a discriminatory intent actionable under Title VII. *See* Complaint [DE-1.1], ¶¶ 3, 6. Guion bases his Title VII claims on the following alleged adverse employment actions: not being offered overtime on December 6 and 13, 2008, as a result of an inaccurate representation of his overtime hours reflected on the Overtime Accounting Sheet, being subjected to a hostile work environment, and denial of training.

In order to adequately plead a Title VII claim, a plaintiff must present some factual support for each element of his claim of discrimination, including facts supporting each element of a *prima facie* case where such claim is built on circumstantial evidence. *See Bass v. E. I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). A complaint that falls short of this requirement must be dismissed pursuant to Rule 12(b)(6).

A *prima facie* case of employment discrimination is comprised of facts tending to show (1) the plaintiff's membership in a protected class; (2) the plaintiff's satisfactory job performance; (3) the plaintiff experiencing an adverse employment action; and (4) either an allegation or a showing (depending on the stage of the proceedings) that similarly-situated individuals outside of the plaintiff's protected class received more favorable treatment. *See, e.g., White v. BFI Waste Services, LLC*, 375 F.3d 288, 295 (4th Cir. 2004). The purpose of Title VII is to protect employees from unlawful discrimination affecting a material term, condition or benefit of employment, and that purpose is reflected in the elements of a Title VII *prima facie* case. Title VII does not guarantee employees a congenial workplace, nor does it insulate them from discommodious employment decisions routinely made by employers in the exercise of business judgment. *See, e.g., Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999) ("Congress did not intend Title VII to provide redress for trivial discomforts endemic to employment;" a

---

Oct. 13, 2008); *Guion v. Winter*, No. 4:07-CV-197-BR (E.D.N.C.) (Summary judgment entered for the Agency on allegations of race, reprisal, sex, job assignment and promotion).

7

plaintiff must prove that he suffered a "tangible employment action" which carries "significant detrimental effect[s]"); *Jiminez v. Mary Washington College*, 57 F.3d 369, 383 (4th Cir. 1995) ("The crucial issue in a Title VII action is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment").

*1. Deprivation of Overtime Opportunity*

The crux of Guion's employment grievance is that he was not offered the opportunity to work overtime on December 6 and 13, 2008. *See* Complaint [DE-1.1], ¶ 8. However, Guion fails in both his Complaint and in his Response to the instant motion, to assert facts to support his theory. Rather, he simply cites the dates that the alleged discrimination occurred, and makes conclusory statements about the harm he suffered from the alleged discrimination. *See id.* ¶¶ 8-9. Merely inserting such words as "discriminat[ion]" in proximity to his core grievances does not transform them into an actionable discrimination claim. *See, e.g., Bass*, 324 F.3d at 765 ("The words 'hostile work environment' are not talismanic, for they are but a legal conclusion; it is the alleged facts supporting these words, construed liberally, which are the proper focus at the motion to dismiss stage."). Because Guion is *pro se* and using a court approved form to file his Complaint, the Agency explains that the court should rely on the administrative record in this case to flesh out Guion's true grievances. *See* [DE-11.4] Exh. C, Formal Administrative Complaint of Discrimination, pp. 2-4.

To create a *prima facie* inference of discrimination, Guion must at least show a material difference in the way that a similarly situated co-worker outside of the protected class (Guion is black) is treated. At the pleading stage, he must, yet failed to, provide factual support for such an allegation. *See Bass*, 324 F.3d at 765; *see also* Compl. [DE-11] ¶¶ 8-9. The Agency contends that, after months of written discovery during the underlying administrative case, Guion should have had at his disposal more than enough factual support to plead a plausible race discrimination claim, if in fact such factual support exists. Nevertheless, Guion has yet to name

8

a proper similarly-situated employee outside of his protected group (African-American) who was treated more favorably with regard to overtime.

Guion claims that Student Career Experience Program (SCEP) trainees, which are commonly referred to as "co-ops," were treated better than he. *See* Memo [DE-11.7], Exh. F, Guion Affid., pp. 46-47. He also claims that he was treated differently because of "personality." *See* Compl. [DE-11], ¶6. However, because neither employment status[4] nor personality is a discrete classification protected under Title VII, neither category forms a cognizable ground for Title VII relief. That is, Guion did not compare his treatment to any particular "co-op" employee who was not a member of his own race, nor did he allege any particular white "co-op" employee was allowed to work significantly more overtime hours than he did. *See, e.g., White v. B.F.I. Waste Services, LLC*, 375 F.3d at 294-96 (no evidence that defendants raised the pay codes of white workers and not those of black workers).

Alternatively, the Agency suggests that the court credit the undisputed record evidence that it has submitted, convert the instant motion under Rule 12(d) to one for summary judgment, assume for that purpose that a *prima facie* case is established, and grant summary judgment against Guion because the Agency has proffered a legitimate, nondiscriminatory reason for its conduct which is not pretextual. *See U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 713-17 (1983). The Agency contends that Guion has not and cannot raise a genuine issue of material fact with respect to these ultimate issues. Guion has offered only speculation that he was subject to racial discrimination based on his belief that under the Negotiated Agreement, overtime must be distributed "fairly" among all employees. *See* Memo [DE-11.7], Exh. F, Guion Aff. at pp. 46, 50. Even assuming the Agreement requires "fairness" in the assignment of overtime hours, "fairness" does not in this context require sameness or

---

[4] Guion points out that co-op employees do not enjoy "federal status."

9

equality among all employees, but among employees who are qualified according to the established protocol.

The evidence collected during the EEO investigation demonstrates that an established protocol is in place for assigning overtime which comports with (and is "rigidly controlled" by) Article 9 of the Negotiated Agreement, and that the established policy was followed when overtime was assigned on December 6 and 13, 2008. *See* Memo [DE-11.3], Exh. B, Burke Decl., ¶¶ 6, 14. Specifically, when an overtime requirement is identified and approved, an Overtime Assignment Sheet is prepared which identifies workers by skill level (or trade group) and arranges them by the number of overtime hours each has worked to date (from lowest to highest). *See id.* ¶ 6. In December 2008, in accordance with protocol, the shop lead began with the workers who had the fewest number of overtime hours and worked his way down the list until he had obtained the required number of volunteers. *See id.* ¶¶ 8, 9. The shop lead follows the list, arranged by worker skill level and hours of accumulated overtime to solicit volunteers for the project until the requirement has been met. *See id.*

In this case, workers in the Mechanic trade group were given preference over workers in Guion's trade group, Helpers, because the Mechanics possessed the skill level necessary to meet the requirements, and were deemed best able to work independently. Guion was relatively low on the list in light of his trade group classification and the number of overtime hours for which he already had received credit for the year. The Shop Lead had filled the required number of volunteer slots before Guion's name was reached on the list. *See id.*

The Agency concedes that an arithmetical error was identified in the number of accrued overtime hours that had been attributed to Guion for purposes of his relative standing on the Overtime Assignment Sheet. Guion identified the overstatement in his Administrative Complaint, and the error was corrected. Under the circumstances, however, the error did not

10

affect Guion's eligibility to volunteer for the overtime assignment on December 6 and 13, 2008. *See id.* ¶¶ 10-12.

In sum, uncontroverted evidence of record establishes that the protocol actually used to select workers for overtime on December 6 and 13, 2008, only employed the factors of skill level and prior overtime hours worked. Furthermore, Guion has identified no evidence to suggest that the Agency's established policy for assigning overtime is a subterfuge designed to further some underlying discriminatory motive. Rather, the undisputed evidence shows that the overtime assignment protocol is designed to comport with, and largely is controlled by, the Negotiated Agreement, the Agency's adherence to which amounts to a "legitimate, nondiscriminatory reason" for Guion's not receiving overtime hours on the relevant dates.

The burden then shifts to Guion who is unable, in the end, to show pretext for unlawful discrimination. Notwithstanding the extensive discovery and hefty report of investigation available to him, Guion only managed to plead bare accusations devoid of factual support, which produce no reasonable expectation that further litigation would substantiate a claim of discrimination. *See Iqbal,* 556 U.S. at 678-79; *Twombly,* 550 U.S. at 556. Accordingly, Guion's Title VII claim must be dismissed for failure to state a claim pursuant to Rule 12(b)(6), insofar as it purports to allege that he was not selected to work overtime on December 6, and 13, 2008, because of his race.

2. *Hostile Work Environment; Deprivation of Training Opportunities*

Title VII requires that prior to bringing a claim in federal court, a claimant must exhaust his administrative remedies. *See generally* 42 U.S.C. § 2000e-16; *see also* 29 C.F.R. Part 1614, Subpart A; *Jones,* 551 F.3d at 300. Once a claimant has submitted a Charge of Discrimination through EEO's mandatory administrative process, "[t]he allegations contained in the Administrative Charge of Discrimination generally operate to limit the scope of any subsequent judicial complaint." *Evans v. Technologies Applications and Serv. Co.,* 80 F.3d 954, 962-63

11

(4th Cir. 1996). "Only those discrimination claims stated in the initial charge, those reasonably related to the original [administrative] complaint, and those developed by reasonable investigation of the original [administrative] complaint may be maintained in a subsequent Title VII lawsuit." *Id.* at 963 (citations omitted).

    a. Hostile Work Environment Claim

        i. <u>Failure to Exhaust</u>

The Agency accepted for investigation a race and reprisal claim regarding Guion's failure to be assigned overtime work on December 6 and 13, 2008, and his allegation that inaccurate information was provided on the Overtime Assignments Sheet. *See* Memo [DE-11.5], Exh. D. Guion's Administrative Complaint did not assert an independent claim alleging hostile work environment, nor did Guion provide factual information that hinted at such a claim. As the Supreme Court has recognized, "[h]ostile environment claims are different in kind from discrete acts [of disparate treatment]," in that "their very nature involves repeated conduct" and "are based on the cumulative effect of individual acts." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).

Guion's Administrative Complaint identified two specific dates on which he was not selected to perform overtime work – December 6 and 13, 2008. It also focused on the Overtime Assignment Sheet's reflecting an excessive number of overtime hours Guion purportedly had worked. A liberal and reasonable construction of Guion's Administrative Complaint would not have placed the Agency on notice of the sort of repeated, severe and pervasive conduct required for establishing a hostile work environment claim. *See id.; see also Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). A hostile work environment claim, as analytically distinct from a claim of disparate treatment, does not reasonably relate to the factual predicate for Guion's core allegation that he was denied overtime because he is black and/or because he previously had

12

filed employment discrimination complaints. Nor does the court does perceive that a hostile work environment claim would have been developed by a reasonable investigation into the Administrative Complaint. *Cf. Chacko v. Patuxent Institution*, 429 F.3d 505 (4th Cir. 2005) (dismissing hostile environment claim for lack of exhaustion where administrative complaint raised only discrete instances of disparate treatment). Therefore, the court finds that a "hostile work environment" predicate for Guion's Title VII claim was not exhausted and must be dismissed.

ii. <u>Failure to State a Claim</u>

Guion's hostile work environment claim must be dismissed under the alternative theory that he has failed to state a claim upon which relief can be granted, under Rule 12(b)(6). Title VII protects employees from work environments "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21. Generally, a complaint satisfactorily pleads a Title VII hostile work environment claim if it contains facts tending to show that "the alleged conduct: 1) was unwelcome; 2) resulted because of his [race]; 3) was sufficiently severe or pervasive to alter the conditions of [his] employment; and 4) was imputable to his employer." *Pueschel v. Peters*, 577 F.3d 558, 564-65 (4th Cir. 2009). Guion's Complaint [DE-1.1] however, contains no facts concerning his work environment at all, let alone allegations tending to show that it was "permeated with discriminatory intimidation, ridicule, and insult" as is required to state a Title VII hostile work environment claim. *Harris*, 510 U.S. at 21.

Rather, Guion alleges only that he was discriminated against when he was denied the opportunity to work overtime on December 6 and 13, 2008. *See* Compl. [DE-1.1] ¶8. However, as already noted, disparate treatment claims are entirely distinct from hostile work environment claims. Without any factual allegations in support of this claim beyond the conclusory

statement that he was subjected to a hostile work environment, dismissal is warranted under Rule 12(b)(6) as well. *See Prince-Garrison v. Md. Dep't of Health & Mental Hygiene*, 317 Fed. Appx. 351, 354 (4th Cir. 2009) (affirming dismissal of hostile work environment claim when complaint "did no more than set forth the legal standard for a hostile work environment and wholly failed to provide factual allegations to support her assertion that such a hostile environment existed").

b. Deprivation of Training Claim

Guion did not raise the issue of deprivation of training in either his informal or formal EEO Administrative Complaint. Once the case was scheduled for hearing before the EEOC, however, Guion moved for leave to add the deprivation of training claim. *See* [DE-11.6], Exh. E, Motion to Amend. The Agency opposed the amendment as untimely and futile.

Guion's proposed amendment was:

> Pursuant to 29 C.F.R. Section 1614.106(d), The Complainant wishes to amend his complaint to add the claim(s) of Management failure to properly train the Plaintiff, thereby for all practical purposes eliminating him from almost all overtime, promotion(s) over his seven (7) year span at Naval Aviation Depot; NOW, Fleet Readiness Center-East.
> 
> • On 1 October, 2002, (entering the Electroplating Shop),
> • 13 June, 2004 (Complainant was permanently reassigned to the Electroplating Shop)
> • 18 December 2006, (returned to the Sheetmetal trade)
> • 3 March 2008 (when the Complainant was not properly trained to work overtime)

*Id.*

As noted above, the administrative record does not reveal whether or how the AJ ruled on this motion to amend. The court agrees with the Agency, however, that the proposed amendment is futile because (1) it is not reasonably related to Guion's properly exhausted Title VII claim; (2) it involves issues that were addressed in one or more of Guion's previous EEO discrimination complaints; and (3) it is untimely insofar as it seeks judicial review of those previous administrative decisions.

14

Guion's proposed "failure to train" claim involves different time frames, different actors, and different discriminatory conduct than that which forms the basis for this Title VII federal lawsuit, which itself is limited to an exhausted claim concerning conduct during a single month in 2008, and one supervisory chain. *See Chacko*, 429 F.3d at 509. The proposed amendment spans seven years, and includes different assignments, training, and promotions, and involves different actors. The proposed amendment is not reasonably related to the exhausted claim that properly has been brought before this court.

The only proposed allegations that were not part of Guion's prior EEO activity, *see supra*, footnote 3, are Guion's vague assertions concerning reassignments on December 18, 2006, when he was returned to a Sheetmetal trade position, and on March 3, 2008, when he contends he was not properly trained to work overtime. These reassignments, however, are discrete acts that were not raised within 45 days, thus rendering them untimely. *See, e.g., Velazquez-Rivera v. Danzig*, 234 F.3d 790, 794 (1st Cir. 2000) (holding that a firefighter employed by Dept. of the Navy had not exhausted administrative remedies for discrimination claim "since there had been no contact with an [EEOC] counselor within 45 days" of the alleged discrimination) (citing 29 U.S.C. § 1614.105(a)(1)).

Furthermore, these allegations fail to state a claim because plaintiff does not allege how either of those actions were so adverse as materially to alter the terms or conditions of his employment. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (an adverse employment action is akin to "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"). Guion's untimely and conclusory assertions of discriminatory training deprivation are insufficient to state a cause of action.

15

B. <u>Conspiracy to Injure by Despotism and Oligarchy</u>

Finally, Guion alleges that the Agency conspired against him by practicing despotism[5] and oligarchy,[6] and that he is entitled to relief as a result thereof. He does not specify under what legal theory he purports to raise these claims.

"The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Consent to suit cannot be implied; it must be "unequivocally expressed." *United States v. King*, 395 U.S. 1, 4 (1969). Where no such consent exists, sovereign immunity operates as a jurisdictional bar. *Sherwood*, 312 U.S. at 587-88. A plaintiff has the burden of establishing that his claim is permitted pursuant to a waiver of sovereign immunity. *See McNutt v. GMAC*, 298 U.S. 178 (1936).

In *Brown v. General Services Administration*, 425 U.S. 820, 829-32 (1976), the Supreme Court held that Title VII provides the exclusive, pre-emptive remedy for a federal employee seeking to redress employment discrimination. The *Brown* Court noted that allowing another, less demanding statute, such as the Federal Tort Claims Act, to allow immediate access to the courts by preempting Title VII would create a risk that Title VII "would be driven out of currency." *Id.* at 833-834. Title VII does not, however, provide redress for a federal employee's allegations that his employer conspired to injure him by practicing despotism and oligarchy. The court concludes that these allegations fail to state a claim for relief, and must be dismissed.

---

[5] "Despotism" is "a system of government in which the ruler has unlimited power." http://www.Merriam-Webster.com/dictionary/despotism (last visited on April 12, 2012).

[6] "Oligarchy" is "government by the few"; "a government in which a small group exercises control especially for corrupt and selfish purposes." http://www.Merriam-Webster.com/dictionary.oligarchy (last visited on April 12, 2012).

16

## CONCLUSION

For the reasons discussed herein, the court agrees with the Agency's analysis set forth in its Memorandum [DE-11] that its Motion to Dismiss [DE-10] must be, and hereby is, ALLOWED. Specifically, Guion's Title VII claim based on the Agency's failure to assign him to work overtime on December 6 and 13, 2008, on grounds of racial and/or "personality" discrimination is DISMISSED for failure to state a claim under Rule 12(b)(6), as is his claim for relief based on an alleged conspiracy to harm him by practicing "despotism and oligarchy." To the extent Guion seeks relief under Title VII for un-exhausted, unrelated and untimely claims, his motion is DENIED for lack of subject matter jurisdiction under Rule 12(b)(1).

This action is DISMISSED, and the Clerk of Court is DIRECTED to close the case.

SO ORDERED.

This the __16th__ day of April, 2012.

/s/ James C. Fox
JAMES C. FOX
Senior United States District Judge